**LEWIS BRISBOIS BISGAARD & SMITH LLP**
TIM SWICKARD, SB# 208777
E-Mail: Tim.Swickard@lewisbrisbois.com
2485 Natomas Park Drive, Suite 450
Sacramento, California 95833
Telephone: 916.564.5400
Facsimile: 916.564.5444
Attorneys for Omega Air Refueling Services, Inc.

MAURICE JOHNSON, Pro Hac Vice To Be Submitted
E-Mail: Maurice.Johnson@lewisbrisbois.com
110 SE 6th Street, Suite 2600
Fort Lauderdale, Florida 33301
Telephone: 954.302.4156
Facsimile: 954.728.1282

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| OMEGA AIR REFUELING SERVICES, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

Plaintiff, Omega Air Refueling Services, Inc.,[1] ("Omega Air" or "Plaintiff") by its attorneys Lewis Brisbois Bisgaard & Smith, alleges upon information and belief as follows:

## NATURE OF ACTION

1. This action seeks judicial review of the decision and final agency action of the United States Coast Guard National Pollution Funds Center and the United States of America (collectively the "Agency") finding Omega Air responsible, pursuant to the Oil Pollution Act of 1990 (the "OPA") for natural resource damages ("NRD") that occurred in Ventura County,

[1] On September 23, 2026, Omega Air was acquired by Augustus Global, LLC. Wingman, Topco LLC is the parent company for Omega Air.

California. Specifically, on May 18, 2011, Plaintiff's aircraft crashed during take-off from the Point Mugu Naval Base in Point Mugu, California, into the Point Mugu Lagoon and saltwater marsh on the shore of the Pacific Ocean ("Point Mugu Lagoon"). After the accident, scattered debris, including portions of the plane, and over 10,000 gallons of jet fuel spilled into the wetlands of Point Mugu. Plaintiff and other state and federal agencies joined a unified command, assessed damages from the accident, and identified areas that were a threat to human health and concern. Thereafter, Plaintiff paid approximately $2,628,174 in remediating and restoring the Point Mugu Lagoon to its original condition.

2. Approximately fifteen years later after the accident, the Agency notified Plaintiff that it is seeking reimbursement of payment of a claim of Natural Resource Damages ("NRD") paid to the United States Department of the Navy ("U.S. Navy") from the Oil Spill Liability Trust Fund (the "Fund") in the amount of $1,116,427.93. Plaintiff informed Defendant that it is not a "responsible party" or "onshore facility" as defined in the OPA and that Plaintiff and the crew of its Boeing 707-321B Air Refueling Tanker were operating under the Contract with, and under the sole direct orders of the U.S. Navy. A contractor working as a Public Use Operation aircraft under contract with the U.S. Navy, i.e. the Government, is immune from any civil liability for actions the U.S. Navy ordered them to take. Moreover, the accident occurred because a third party prior owner of the aircraft failed to follow an Federal Aviation Administration (FAA) Directive prior to Plaintiff's taking ownership of the aircraft.

3. Defendant's decision to hold Plaintiff liable in its final agency action letter without notice and opportunity to be heard is not only arbitrary and capricious, but it also violates Plaintiff's Fifth Amendment Constitutional Right to Due Process. Therefore, Plaintiff respectfully requests this Court: (i) review of the Defendants actions because there is no adequate remedy in a court; (ii) enjoin the Defendants from taking any enforcement action, or imposing any penalty, against the Plaintiffs springing from the accident and OPA; (iii) declare Defendant's final agency action letter constitutionally invalid and unenforceable; and (iv) declare that Section 2702(a) of the OPA is unconstitutional as impermissibly vague and overbroad as applied to Plaintiffs.

## JURISDICTION AND VENUE

4. Omega Air brings this action for injunctive and declaratory relief pursuant to 28 U.S.C. § 1331 ("federal question jurisdiction"), § 2202 ("authorizing injunctive relief"), § 2201 ("authorizing declaratory relief"), the OPA, 33 U.S.C. § 2701, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.

5. Venue in the District Court for the Central District of California is proper pursuant to 33 U.S.C. § 2717(b).

## THE PARTIES

6. Omega Air is a profit corporation incorporated under the laws of the state of Delaware. At the time of the accident, Omega Air is, and was, under contract with the Naval Air Systems Command PMA 226. It is the primary worldwide provider for support for the United States Department of the Navy ("U.S. Navy") and United States Marine Corps ("U.S. Marine Corps.") flight operation worldwide. Omega Air also provides boom air-to-air refueling support to both the United States Air Force and Air National Guard Units.

7. The Agency administers various aspects of the OPA, including the processing of claims for reimbursement from the Fund as provided by OPA and implementing regulations, 33 C.F.R. Part 136 *et. seq*.

## LEGAL BACKGROUND

### A. The OPA

8. Congress enacted the OPA, codified at 33 U.S.C. §§ 2701 – 2761, in 1990.

9. The OPA provides that: "Nothwithstanding any other provision or rule of law, and subject to the provisions of the Act, each *responsible party* for a vessel or a *facility* from which oil is discharged, or which poses the substantial threat of discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and *damages* specified in subsection (b) that result from such incident." 33 U.S.C. § 2702(a). Covered removal costs and damages include removal costs for the "injury to, destruction of, loss of, or loss use of, natural resources . . ." 33 U.S.C. § 2702(b)(1) & (2).

10. The OPA defines "Responsible Party" as any of the entities in the following categories: "(A) Vessels, (B) Onshore Facilities; (C) Offshore Facilities; (D) Foreign Facilities; (E) Deepwater Ports; (F) Pipelines, and (G) Abandonment, which includes an Abandoned Vessel, Onshore Facility, Deepwater Facility, Pipeline, Offshore Facility, or Foreign Offshore Unit . . ." 33 U.S.C. § 2701(32)(A-F).

11. The OPA defines "Facility" as "any structure, group of structures, equipment, or device (other than a vessel) which is used for one or more of the following purposes: exploring for, drilling for, producing, storing, handling, transferring, processing, or transporting oil." 33 U.S.C. § 2701(9).

12. The OPA defines "Onshore Facility" as "any facility (including, but not limited to, motor vehicles and rolling stock) of any kind located in, on, or under, any land within the United States other than submerged land." 33 U.S.C. § 2701(24).

13. The OPA defines "Incident" as "any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge oil." 33 U.S.C. § 2701(14).

14. The OPA defines "Removal" as any "means [of] containment and removal of oil . . . from water and shorelines or the taking of other actions as may be necessary to minimize or mitigate damage to the public health or welfare, including, but not limited to, fish, shellfish, wildlife, and public and private property, shorelines, and beaches." 33 U.S.C. § 2701(30).

15. The OPA defines "Damages" as any of the following: (A) Natural Resources; (B) Real or Personal Property; (C) Subsistence Use; (D) Revenues; (E) Profits and Earning Capacity; and (F) Public Services. 33 U.S.C. § 2702(b)(2)(A-F).

16. The OPA defines "Removal Costs" as "the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of a discharge of oil, the costs to prevent, minimize, or mitigate oil pollution from such an incident." 33 U.S.C. § 2701(31).

17. Under the OPA, however, a responsible party is not liable for removal costs or damages, if the responsible party proves, by the preponderance of the evidence, that the discharge of oil and "the resulting damages or removal costs were caused solely by . . . an act or omission of a third party . . ." 33 U.S.C. § 2703(a)(3). Specifically, the responsible party needs to demonstrate it: "(i) exercised due care with respect to the oil concerned, taking into consideration the characteristics of the oil and in light of all relevant facts and circumstances; and (ii) took precautions against foreseeable acts or omissions of any such third party and the foreseeable consequences of those acts or omissions . . . ." (Id.)

18. Generally, any action for damages under the OPA are barred unless it is brought within three (3) years after "the date on which the loss and the connection of the loss with the discharge in question are reasonably discoverable with the exercise of due care or in the case of natural resource damages . . . the date of completion of the natural resources damage assessment." 33 U.S.C. § 2717(f)(1)(A)&(B).

19. In subrogation cases, however, "[n]o action based on rights subrogated pursuant to this Act by reason of payment of a claim maybe commenced . . . more than 3 years after the date of payment of such claim. 33 U.S.C. § 2717(f)(4).

**B. <u>The APA</u>**

20. The Administrative Procedure Act provides that "a person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute is entitled to judicial review thereof." 5 U.S.C. § 702.

21. "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

22. "[T]he reviewing court [must] decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.

23. The reviewing court must "compel agency action unlawfully withheld . . and set aside agency action, finding, and conclusions found to be: [(i)] arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with the law, and [(ii)] contrary to constitutional right, power, privilege, or immunity . . . .” 5 U.S.C. § 706 (A) & (B).

## FACTUAL BACKGROUND

### A. Factual Background

24. Starting in or around 2010 and continuing through 2015, Omega Air tankers were under contract with the U.S. Navy to provide in-flight refueling services through the Naval Air Systems Command. According to the Federal Aviation Administration (“FAA”) memorandum dated, September 29, 2011, the Omega Air aircrafts were officially designated as “Public Use Aircrafts” solely operating under the terms of the Naval Air Systems Command contract. ***See*** Federal Aviation Administration Memorandum dated September 29, 2011 attached hereto as **Exhibit A.**

25. During the evening hours on May 18, 2011, a cargo Boeing707-321B, Registration N707AR, owned by Omega Air, crashed during take-off on Runway 21 from the Point Mugu Naval Base into the Point Mugu Lagoon.

26. Following the plane crash, a subsequent joint investigation by Omega Air, the U.S. Navy, and the National Transportation Safety Board (“NTSB”) revealed a structural failure of the attachment pylon between the engine and the wing attachment point. The structural failure caused Engine 2 to detach from the aircraft, crash, and become submerged in the Point Mugu Lagoon[2].

27. On May 18, 2011, Omega Air, the U.S. Navy Clean-up Program, the California Department of Fish and Wildlife[3], Office of Spill Prevention and Response (“OSPR”), U.S. Coast Guard, U.S. Fish and Wildlife Services and local fire department set up a unified command to discuss clean-up efforts surrounding the crash site.

---

[2] The airplane sustained substantial damage due to impact and was partially consumed by a post-crash fire. The crew, including the Captain, First Officer, and Flight Engineer, survived the crash and sustained minor injuries.

[3] California Department of Fish and Wildlife was formerly named the California Department of Fish and Game.

28. Starting on June 9, 2011, and continuing through June 14, 2011, Omega Air spent approximately $863,000 recovering the aircraft wreckage from the Point Mugu Lagoon.

29. Later that month, after the aircraft fuselage and other crash debris were removed from the Point Mugu Lagoon, an Initial Assessment Study ("IAS") was conducted by engineering consultants hired to identify and assess the contaminants of potential concern to determine if there was any threat to human health and/or to the environment.

30. Based upon that IAS, there were two areas identified as contaminants of potential concern--the area within the submerged Point Mugu Lagoon where the aircraft came to rest and the debris field immediately to the northeast of the plane's resting area.

31. Through numerous discussions and scientific testing, the consultant's proposed remedy to repair the crash site was to remove the submerged sediment impacted by excavation and to replace the excavated material with similar natural materials.

32. Starting in October 2011 and continuing through December 2011, Omega Air had approximately 2,035 cubic yards of submerged contaminated wetland sediment excavated from the two areas of concern.

33. Thereafter, Omega Air used approximately 1,450 cubic yards of imported sediment and 585 cubic yards of harvested mudflat materials to replace the submerged excavated areas. In total, approximately 34,182 square feet of mudflat was restored to pre-crash ground surface.

34. In January 2012, excavation, backfill, and grading of the crash site was completed. *See* Final Damage Assessment and Restoration Plan/Environmental Assessment for the 18th of May 2011 Omega 707 Air Tanker Crash dated April 2016, attached hereto as **Exhibit B**.

35. On April 27, 2012, a Final Remedial Action Activity Report ("RAAR") for the Omega Air Crash Site was completed to "document Omega Air, Inc. achievement of the remedial action objectives established by the U.S. Navy in consultation with the California Department of Fish and Game in response to operation resulting from the Boeing K707 aerial refueling tanker crash . . . ." *See* a Final Remedial Action Activity Report for the Omega Air Crash Site Naval Base Ventura County Point Magu, California attached hereto as **Exhibit C**.

36. According to the RAAR, no further action was recommended at the Omega Air crash site. “The results of confirmation samples obtained from each of the areas of concern . . . indicate that chemical of potential concern identified in the Site Work Plan have been successfully removed to levels below the agreed upon Project Action levels, and *the site does not pose an unacceptable risk to human health or the environment*.” (Id).

37. On April 30, 2012, a Certificate of Completion was issued and signed by the Environmental Engineer at the Naval Base Ventura County, Environmental Division, Naval Facilities Engineering Command Southwest. (Id).

38. In total, Omega Air expended over $2,628,174 in remediating and restoring the Point Mugu Lagoon to its original condition. The total amount consists of approximately $863,000 for recovery of the aircraft wreckage, $1,568,762 for the cleanup and restoration of the Pacific Ocean tideland lagoon and $196,412 for Natural Resources Damages Assessment (“NRDA”) Trustee administrative costs.

39. On January 2, 2013, the National Transportation Safety Board issued an aircraft accident brief that concluded the accident was caused by the “failure of a midspar fitting, which was susceptible to fatigue cracking and should have been replaced with a newer more fatigue-resistant version of the fitting as required by the airworthiness directive.” Of particular import, the NTSB report stated, “also causal was an erroneous maintenance entry made by a previous aircraft owner, which incorrectly reflected that the newer fitting had been installed.” *See* National Transportation Safety Board Aircraft Accident Brief adopted January 2, 2013, attached hereto as **Exhibit D**.

40. Four years later, in April 2016, the NRDA Trustees prepared a Final Damage Assessment and Restoration Plan/Environmental Assessment in accordance with the OPA requirements for the natural resource losses resulting from Omega Air’s 2011 crash. ***See* Exhibit B**.

41. On June 10, 2016, the Final Damage Assessment and Restoration Plan/Environmental Assessment” Notice of Availability was published in the Ventura County Star.

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

**B. <u>Procedural Background</u>**

42. In June 2011, the FAA was asked to determine whether Plaintiff's aircraft was "operating in public aircraft operation status at the time of the accident. ***See* Exhibit A.** In the report the FAA concluded: (i) Plaintiff's aircraft was operating as a public aircraft operation "within the meaning of the statute, the position of the parties, and Federal Aviation Administration guidance materials;" and (ii) *both parties understood that a public aircraft operation with the Navy being responsible was intended*; no persons were on board other than required crewmembers; and the purpose of the flight was governmental, since the air-to-air refueling was for Navy aircraft operations and is a military only capability. (Id.)

43. On November 22, 2016, Omega Air received a Demand Letter from the U.S. Navy to pay $1,178,584 for alleged Natural Resource Damages. *See* Department of Navy Trustee's Demand Letter Pursuant to 15 C.F.R. §990.62 dated November 22, 2016, attached hereto as **Exhibit E**.

44. From on or about November 22, 2016, through January 2018, Omega Air and the U.S. Navy attempted to negotiate a settlement. which were unsuccessful.

45. On March 19, 2019, the Agency received a claim from the U.S. Navy, Department of Interior ("DOI"), and the California Department of Fish and Wildlife (collectively "the Trustees") for past assessment and future costs to restore damages resulting from the Omega Air accident in Point Mugu. The initial claim was for $1,183,092. However, in November 2019, the U.S. Navy reduced their claim to $1,179,705. *See* National Pollution Funds Cener Memorandum dated June 21, 2021, attached hereto as **Exhibit F**.

46. In June 21, 2021, the Trustees claim was denied. (Id.)

47. On September 21, 2023, after the Trustees submitted a request for reconsideration, the Trustees submitted a new claim to the Agency for past assessment and future costs to restore damages resulting from the Omega Air accident. The new claim was for $1,125,671.41. *See* National Pollution Funds Cener Memorandum dated October 3, 2024, attached hereto as **Exhibit G.**

48. On October 3, 2024, the Agency offered the Trustees payment of $1,116,427.93 from the Oil Spill Liability Trust Fund (“OSLTF). (Id.).

49. Approximately ten months later, on August 14, 2025, and then again on February 12, 2026, Omega Air received a notice of Potential Liability from the Agency demanding $1,158, 132.93 for costs associated with removing the pollution from Point Mugu. *See* Letter from Director of United States Coast Guard National Pollutions Funds Center dated February 12, 2026, attached hereto as **Exhibit H**.

50. On August 6, 2026, Omega Air provided the Agency with a twenty-three (23) page memorandum that detailed all clams and defenses why Omega Air was immune from any OPA NRD liability. *See* Lewis Brisbois Bisgaard & Smith Defense to Liability Memorandum attached hereto as **Exhibit I.**

51. On September 30, 2026, the Agency asserted Omega Air failed to establish any defenses or liability exemptions and, as a result, issued a final agency action letter and invoice that required Omega Air to reimburse it in the amount of $1,116,427.93. *See* Director of National Pollution Funds Center Final Action Letter dated September 30, 2026, attached hereto as **Exhibit J.**

52. According to the final agency action letter, Omega Air is required to pay $1,116,427.93 for all costs that were paid from the OSLTF. The amount paid was based on the same assessment in the 2016 U.S. Navy Demand letter.

53. The final agency action letter provides payment must be made within thirty days from the date of the letter which is October 30, 2026. If payment is not received by the deadline, the debt will be transferred to either the United States Department of Treasury’s Debt Management Services or to the U.S. Department of Justice. (*Id.*)

**COUNT I**
**INJUNCTIVE RELIEF ALLEGATIONS**

54. Omega Air hereby reallege and incorporates by reference the allegations contained in Paragraphs 1 through 53 as though fully set for herein.

55. If an injunction is not issued enjoining the Defendants from enforcing the final agency determination that requires Omega Air to reimburse the Defendant, Plaintiffs will be irreparably harmed. Omega Air is a government contractor providing for Public Use Aircraft that provides in air refueling services to U.S. Military forces. As the primary contractor that significantly relies on, and provides, in-flight refueling services to both the United States Air Force and Air National Guard Units, any determination that a debt is due puts the Plaintiff in jeopardy of losing contracts and work from the United States. *see also Oregon Council for Humanities v. United States DOGE Services*, 794 F.Supp. 3d 840, 891 (9th Cir. 2025) (holding where projects rely heavily or entirely on federal funding, "[a] total loss of federal funding would be catastrophic, and the [Plaintiffs'] need for certainty renders damages inadequate.") *citing City and Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018).

56. Plaintiff is likely to succeed on the merits.

57. If not enjoined by this Court, Defendants will continue to threaten to, and actually, enforce the final agency action letter in derogation of Plaintiff's rights.

58. Plaintiff has no plain, speedy, and/or adequate remedy at law.

59. Based upon the underlying facts and circumstances leading back to the Final Assessment and Restoration Plan/ Environmental Assessment conducted in April 2016, paragraph 40, and the Final Damage Assessment and Restoration Plan/Environmental Assessment Notice of Availability that was published on June 10, 2016, paragraph 41, Defendant's letter dated September 30, 2026, states that the decision to find Omega Air liable for Natural Resource Damages was their final determination that a debt was "legally valid, authenticated, and fully owing to the United States." Thus, the letter is a final agency action subject to judicial review. *See* 5 U.S.C. § 702.

60. Under the Debt Collection Improvement Act, 31CFR §285.12(b), "[f]iscal service and other debt collection centers may take debt collection action on behalf of one or more federal agencies." However, a "creditor is not required to transfer a debt to Fiscal Service . . . during such period of time that the *debt is in litigation*." 31 CFR §285.12(d)(1)(i). A debt is in litigation if "it

is the subject of proceedings pending in a court of competent jurisdiction, whether initiated by the creditor agency, debtor, or any other party." 31 CFR §285.12(d)(2)(i)(B).

61. Accordingly, injunctive relief is appropriate.

**COUNT II**
**DECLARATORY RELIEF ALLEGATIONS**

62. Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 53 as though fully set forth herein.

63. An actual and substantial controversy exists between Plaintiff and Defendant regarding Defendant's failure to comply with the OPA, the APA, and the Constitution in their determination that Defendant is entitled to reimbursement for the payment of NRD that arose from the crash of the Plaintiff's plane in the Point Mugu Lagoon. See Composite Exhibit K1-3.

64. Defendant determined Plaintiff is a "responsible party for a facility from which oil is discharged." Plaintiff is not a "Responsible Party" or "Onshore Facility" as defined under the OPA.

65. Defendant also determined that the Plaintiff, as the party responsible, caused natural resource damage. However, Plaintiff operated a Public Use Aircraft and was working under contract and, at the behest, of the U.S. Navy. As a contractor for the U.S. Navy, *i.e.* the Government, "it is clear that if this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." *Yearsley v. W.A. Ross Const. Co.*, 60 S.Ct. 413, 414 (1940). Any agent or officer of the Government "purporting to act on its behalf has been held to be liable for his conduct causing injury to another, the ground of liability has been found to be either that he exceeded his authority or that it was not validly conferred." (Id.) *see Butters v. Vance Intern, Inc*. 225 F.3d 462 (4th Cir. 2000) (holding "courts have extended derivative immunity to private contractors, "particularly in light of the government's unquestioned need to delegate governmental functions."). *see also City of Worcester v. HCA Management Co., Inc*. 753 F.Supp 31 (D.Mass.1990). ("The Supreme Court has long held that, pursuant to sovereign immunity, a private

company which contracts with the federal government to perform the duties of the government will not be held liable for its actions on behalf of the government.").

66. Furthermore, the FAA confirmed both parties understood that a public aircraft operation with the Navy being responsible was intended; no persons were on board other than required crewmembers; and the purpose of the flight was governmental, since the air-to-air refueling was for Navy aircraft operations and is a military only capability. ***See* Exhibit A.** Therefore, the U.S. Navy is the responsible party.

67. Defendant determined Omega Air's third-party defense was inapplicable and does not satisfy the elements described in the OPA. Plaintiff has demonstrated they exercised due care and took precautions against any foreseeable acts.

68. Based upon the underlying facts and circumstances leading back to the Final Assessment and Restoration Plan/ Environmental Assessment conducted in April 2016, paragraph 40, and the Final Damage Assessment and Restoration Plan/Environmental Assessment Notice of Availability that was published on June 10, 2016, paragraph 41, Defendant's letter dated September 30, 2026, states that the decision to find Omega Air liable for Natural Resource Damages was their final determination that a debt was "legally valid, authenticated, and fully owing to the United States." Thus, the letter is a final agency action subject to judicial review. See 5 U.S.C. § 702.

69. This case is presently justiciable because the Defendant's failure to comply with these laws is the direct result of a final agency action that has caused and will continue to cause immediate and concrete injury to the plaintiff.

70. Declaratory relief is, therefore, appropriate to resolve this controversy.

**<u>FIRST CLAIM FOR RELIEF – DECLARATORY ACTION</u>**
**(Statutory Violation)**

71. Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 52 as though fully set forth herein.

72. Plaintiff is not liable under the OPA because Plaintiff (i) is not a responsible party as defined in the OPA; (ii) is not a facility as defined in the OPA; and (iii) exercised due care with respect to the oil concerned, taking into consideration the characteristics of the oil and in light of all relevant facts and circumstances; and took precautions against foreseeable acts or omissions of any such third party and the foreseeable consequences of those acts or omissions; *See* 33 U.S.C. §§ 2701, 2702, and 2704.

73. Defendant's determination that it is entitled to reimbursement pursuant to the OPA is, therefore, arbitrary, capricious. . .otherwise not in accordance with law and contrary to constitutional right, power, privilege, or immunity. *See* 5 U.S.C.§ 706(2)(A) & (B).

**CLAIM III**
**(Violation of U.S. Const. Amend. V)**

74. Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 53 as fully set forth herein.

75. Before the Defendant can collect on any debt, it must (i) provide written notice of the type and amount of claim; (ii) provide an opportunity to inspect and copy of the records of the agency related to the claim; (iii) an opportunity to review within the agency of the decision of the agency related to the claim; and (iv) an opportunity to make a written agreement with the head of the agency to repay the amount of the claim. 31 U.S.C. §3716.

76. Defendant's letter of final agency action requiring Plaintiff to reimburse it for costs arising from the crash at the Point Mugu Lagoon without first providing Plaintiffs with an opportunity to be heard violates Plaintiff's Constitutional 5th Amendment procedural due process rights. *See* U.S. Const. amend. V.

77. Furthermore, the Defendant did not fully and adequately consider the defenses raised by Omega Air.

78. The Defendant's final determination letter is therefore null and void, and without legal effect.

**COUNT IV**
**(Violation of U.S. Const. Amend. V)**

76. Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 53 as fully set forth herein.

77. Under Section 2702 of the OPA, "each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon, the navigable waters or adjoining shorelines or the exclusive zone is liable for the removal costs and damages. . . ." *See* 33 U.S.C. § 2702(a). A "facility" means any structure, group of structures, equipment, or device (other than a vessel) which is used for one or more of the following purposes: exploring for, drilling for, producing, storing, handling, transferring, processing, or transporting oil. *See* 33 U.S.C. § 2701(9).

78. Defendants have claimed Plaintiff is a responsible party facility from which oil is discharged.

79. Defendants have thereby violated Plaintiff's substantive due process rights because the definition of facility is impermissibly vague, overbroad, and does not afford an adequate basis for judicial review.

80. Section 2702(a) of the OPA is therefore unconstitutional as applied to Plaintiffs and is null and void.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgement as follows:

1. That this Court reviews the Defendant's actions because there is no adequate remedy in a court and order an injunction enjoining the Defendants from taking any enforcement action, or imposing any penalty, against the Plaintiffs springing from the accident and OPA.

2. That this Court declares that Defendant's final agency action letter is constitutionally invalid and unenforceable.

3. That this Court declares that Section 2702(a) of the OPA, authorizing a responsible party facility from which oil to be discharged to be found liable for removal costs, is unconstitutional as impermissibly vague and overbroad as applied to Plaintiffs.

4. An award for attorney fees, expenses, and costs; and

5. For such other relief as the Court deems just and proper.

DATED: this 27th day of October, 2026

By: ______________________________

TIM SWICKARD, SB# 208777
Lewis Brisbois Bisgaard & Smith
2485 Natomas Park Drive, Suite 450
Sacramento, California 95833
Telephone: 916.564.5400
Facsimile: 916.564.5444
E-Mail: Tim.Swickard@lewisbrisbois.com

MAURICE JOHNSON
(pro hac vice to be submitted)
Lewis Brisbois Bisgaard & Smith
110 SE 6th Street, Suite 2600
Fort Lauderdale, Florida 33301
Telephone: 954.302.4156
Facsimile: 954.728.1282
E-Mail: Maurice.Johnson@lewisbrisbois.com

Attorneys for Omega Air Refueling Services, Inc.